■ In the Matter of NIAGARA LUBRICANT COMPANY, INC., Petitioner, v STATE TAX COMMISSION, Respondent.—Main, J. P. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of respondent which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

Petitioner is engaged in the manufacture, distribution and sale of various types of industrial lubricants such as engine and gear oils, transmission fluids and grease. These lubricants are sold in two ways. Some are delivered by pumping the lubricant from petitioner's tank trucks directly into the customers' tanks, most of which have a capacity of 275 gallons or more; these sales are referred to as bulk sales. The balance of the lubricants are sold in reusable 55-gallon drums; these sales are referred to as drum sales. During the audit period relevant to this proceeding, it was the practice of petitioner to retrieve the drums when emptied and to take them to an independent firm where they were cleaned both inside and out and were freshly painted for further use by petitioner. This process was, of course, to prevent contamination of the particular lubricant with which the drum was to be refilled. Petitioner paid for this service but did not pay any tax on the cost of this service. When the Audit Division of the Department of Taxation and Finance conducted an audit of petitioner's affairs for the period from December 1, 1976 through May 31, 1980, it discovered that petitioner had not paid any sales tax on the amount that it was charged for the drum cleaning and painting service. It concluded that such a tax should have been paid and, accordingly, assessed petitioner the sum of $18,029.56 for the unpaid sales tax as well as an additional amount of $4,101.63 representing the interest thereon. After a prehearing conference, for reasons not pertinent to this appeal, the assessment was reduced to $12,292.30. Nonetheless, petitioner still took issue with the assessment and a hearing was conducted, after which respondent determined, *inter alia,* that the drums did not constitute machinery and equipment under Tax Law § 1115 (a) (12), as contended by petitioner, and were not entitled to the exemption provided by that section. Respondent further noted that Tax Law § 1105 (c) (3) imposes a tax on the *services* of installing, maintaining or repairing of

tangible personal property unless such services are purchases for the purpose of resale. Respondent concluded that the services rendered in connection with the cleaning and painting of petitioner's drums were not for the purpose of resale, but instead were activities related to keeping tangible personal property in a condition of fitness, efficiency readiness, safety or restoring it to such condition (see, 20 NYCRR 527.5 [a] [3]). Petitioner then commenced this proceeding to challenge respondent's determination.

Inasmuch as petitioner has abandoned its earlier contention that the services which it purchased do not fall within the meaning and intent of Tax Law § 1105 (c) (3), we are presented with the sole issue of whether the drum painting and cleaning services done by an independent firm were purchased for the purpose of resale so as to permit petitioner to enjoy exclusion from sales tax as provided by Tax Law § 1105 (c).* Citing Matter of Burger King v State Tax Commn. (51 NY2d 614), petitioner argues that the services that it purchased were for the purpose of resale because, in the case of the drum sales, the lubricants were necessarily contained in the drums. Such reliance is misplaced. The Burger King case involved "wrappings" which contained the food and beverages and were a critical element of the final product sold but, after consumption of the contents, became useless. At bar, title to the serviced drums remained in petitioner, who retrieved the drums and had them serviced for future use. Hence, there was no sale of the drums, as conceded in the testimony of petitioner's president and, consequently, no sale of the services. Under Tax Law § 1101 (b) (5), rental is equated to sale and, since there was no sale, petitioner must demonstrate that it rented the drums if it is to qualify for the exclusion that it seeks. The mere fact that petitioner's customers' lubricants were delivered in drums does not establish that its customers were renting the drums absent a showing that the customers were charged a specific price for the use of those drums (see, Matter of Albany Calcium Light Co. v State Tax Commn., 44 NY2d 986). Petitioner's assertion that the notation on its price sheet, "BULK PRICE—LESS .25¢ PER GAL. OFF DRUM PRICE", satisfies this requirement is flawed. The quoted phrase makes no reference

---

* In its petition, petitioner also raised the issue of whether these services constituted "maintaining, servicing or repairing tangible personal property" within the meaning of Tax Law § 1105 (c) (3). Petitioner, however, has abandoned this argument on this appeal by not raising it in its brief (see, Lamphear v State of New York, 91 AD2d 791; Matter of Smith, 91 AD2d 789, 790).

whatsoever to use or rental and, since bulk sales were made in much larger quantity than drum sales, common sense tells us that the message merely alerted customers to the quantity discount. Moreover, as previously noted, "[i]t should not fall within judicial 'decisional analysis' to determine what is or is not a rental" *(id.,* p 988).

The subject services are somewhat akin to the items addressed in *Celestial Food v New York State Tax Commn.* (63 NY2d 1020) to the extent that both constitute overhead and, as such, are not excludable from the sales tax. Respondent's determination is neither arbitrary nor capricious and must therefore be confirmed.

Determination confirmed, and petition dismissed, without costs. Main, J. P., Weiss, Mikoll and Yesawich, Jr., JJ., concur.

